UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT



THE VERMONT COUNTRY STORE, INC.  :
and GRAVEL AND SHEA, Plaintiffs,  :
                                  :
          v.                      :     Docket No. 1:05-cv-63
                                  :
MICHAEL E. NELSON and             :
ALAN GOLDMAN, Defendants.         :
                                  :

### MEMORANDUM OF LAW OF ALAN GOLDMAN RESPONDING TO THE COURT'S MARCH 14, 2005 ORDER TO SHOW CAUSE AND OPPOSING PLAINTIFFS MOTION FOR IMMEDIATE INJUNCTIVE RELIEF

Alan Goldman, through his counsel, David Putter, Esquire, hereby submits the following memorandum of law responding to the Court's March 14, 2005 Order to Show Cause and opposing Plaintiffs' Motion For Immediate Injunctive Relief.

### OVERVIEW

The Plaintiff Gravel and Shea makes no claims against Defendant Goldman. The two claims Plaintiff Vermont Country Store, Inc. [hereinafter "Plaintiff Corporation"] asserts against Goldman allege tradename infringement and unfair competition under the Lanham Act, 15 U.S.C. §§1114(1)(a) and 1125(a). They are predicated upon Goldman's registration of the tradename "The Montpelier Vermont Country Store" with the Vermont Secretary of State.

The Plaintiff Corporation has *not* demonstrated any of the following necessary elements of its claim for injunctive relief: that it is likely to succeed on the merits; that there are serious questions going to the merits that it has standing to litigate; that the balance of hardships tips in its favor; that Goldman has caused it irreparable injury; that an injunction is necessary to maintain

the status quo pending trial; or that Fed.R.Civ.Pro 65 (a)(2) entitles it to have a trial on the merits of its claim within eight business days of the service of its complaint. The reasons for those deficiencies in Plaintiffs case againt Goldman are, in summary:

1. Neither Goldman nor The Montpelier Vermont Country Store have ever sold, advertised for sale or transported any goods or services in commerce using the tradename "The Montpelier Vermont Country Store". Not only does this deficiency deprive the court of subject matter jurisdiction,

   a). It also renders Plaintiff unable to prove a cognizable "infringement" of its own mark. Since proof of infringement by "use in commerce" is a requisite element of its Lanham Act Causes of action, this deficiency renders Plaintiff Corporation ineligible for injunctive relief;

   b). It also renders Plaintiff unable to prove another requisite element of its Lanham Act Causes of action, to wit: that there is a "likelihood" that an appreciable number of consumers will form the misimpression that Goldman's entity is the source of Plaintiff's goods. This deficiency, too, bars injunctive relief.

2. Even if Goldman's tradename were to be used in commerce, Plaintiff Corporation's mark "The Vermont Country Store" is insufficiently distinctive to be worthy of Lanham Act protection against it. This is because its component phrase "Country Store" is generic, and also because its component term "Vermont" is geographically descriptive.

3. The strength of Plaintiff Corporation's mark is greatly weaken by the large number of United States Patent and Trademark Office approvals of the use of the terms "Country Store" and the distinctiveness limitations that office applies to the Term "Vermont" and the phrase "Country Store".

4. The strength of Plaintiff Corporation's mark is further weakened by the large number of stores in Vermont which use in their names the phrase "country store" and the name of the municipality in which they are located.

5. Plaintiff Corporation has not established that Goldman is subjecting it to a harm which is so actual and imminent and so irreparable that it is entitled to an injunction against him on eight business days notice. In the more than a year that Plaintiff Corporation has had to bring this suit since Goldman registered his tradename with the Vermont Secretary of State, Goldman has not used that tradename to actually sell goods or services, advertise for sale or transport any specific goods or services in commerce, to create a store web site, or to establish a bricks and mortar store..

6.      Contrary to Plaintiff Corporation's request, Fed.R.Civ.Pro 65(a)(2) does not authorize it to procure, even before the time to answer has expired, a final hearing on the merits as to whether Goldman shall be required to cancel his tradename registration.

## FACTS

It was more than a year ago that Defendant Goldman registered the tradename "Montpelier Vermont Country Store The" with the Vermont Secretary of State.[Goldman Declaration, ¶ 1]. The Vermont Secretary of State approved Goldman's registration of that tradename. [Id]. The Secretary of State was obligated to decline that registration if she concluded that the proffered tradename was the same or deceptively similar or likely to be confused or mistaken for any other business name registered with her office. See 11 V.S.A. §1621(c).

At no time did Goldman or The Montpelier Vermont Country Store sell, offer for sale, advertise for sale, advertise or transport any **goods** or services in commerce under or using the tradename "The Montpelier Vermont Country Store". [Goldman Declaration, ¶¶ 2-3]. Goldman's contemplated business for use of the tradename The Montpelier Vermont Country Store was an idea that never evolved to the stage of implementation. [Goldman Declaration, ¶4]. "The Montpelier Vermont Country Store" does not now have and never did have any inventory, catalogue, goods, supplier of goods or arrangement with any supplier of goods.[Id]. It does not now have, and never did have, a bricks and mortar location. [Goldman Declaration, ¶5].

"The Montpelier Vermont Country Store" does not now have and never has had any website on the Internet. [Goldman Declaration, ¶6]. The Plaintiffs base their complaint, in part, upon the use of a website named www.montpeliercountrystore.com. But that website is not now and never has been owned or controlled by Goldman or by "The Montpelier Vermont Country Store". [Goldman Declaration, ¶7]. As alleged in paragraph 13 of the complaint, the website in

question is owned and administered by Michael E. Nelson of BiCoastal Consulting. [Also see Declaration of Goldman, ¶ 9]. Goldman is not now and has never been in the business, with Michael E. Nelson, of selling goods and/or services or the advertisement of goods and services for sale. [See Goldman Declaration ¶ 16].

Moreover, the name of that website about which Plaintiffs complain, www.montpeliercountrystore.com, differs materially from the "The Montpelier Vermont Country Store" tradename Goldman registered with the Vermont Secretary of State. [Goldman Declaration at ¶ 9]. Significantly, the website identification language on Attachment D which Plaintiffs appended to their Complaint confirms that paragraph 13 of the complaint is incorrect in its assertion that the website is named the "Montpelier Vermont Country Store".

There is an organization in Vermont named "Vermont Alliance of Independent Country Stores". [Goldman Declaration, ¶ 10]. A review of this organization's website, at www.vaics.org/, shows that eighteen Vermont stores which are members of the organization use the phrase "country store" as part of their names.[1] The names of all but one of these eighteen "country stores" also includes the name of the municipality in which the store is located. Vrest Orten, founder of the Plaintiff Corporation, authored a book about country stores in Vermont in which he referred to such stores as an "institution" which is a "keystone of American culture".

---

[1] The list of member stores on the website of the Vermont Alliance of Independent Country Stores includes the following names: Bridgewater Corners Country Store; East Charleston Country Store; Jericho Center Country Store; Jerusalem Corners Country Store; Jonesville Country Store; Mendon Country Store; Morgan Country Store; North Concord Country Store; North Montpelier/Riverbend Country Store; Ripton Country Store; Roxbury Country Store; Shaftsbury Country Store; South Woodstock Country Store; Taftsville Country Store; Underhill Country Store; Wardsboro Country Store; West Arlington Wayside Country Store; and Clutes Country Store.

[See Goldman Declaration ¶ 11]. A June 7, 2003 proclamation by the Governor of Vermont recognizes that the independent country store, inter-alia, is a fundamental component of Vermont's commerce, history and landscape, integral to Vermont's individuality, represents the core values and ethics of Vermonters, is central to a mixed innovative and dynamic economic and community climate and contributes to a critical understanding and respect for Vermont's heritage. [See Goldman Declaration ¶ 12]. It also proclaims September 2003 as "Independent Country Store Month in Vermont". [Id.]

An electronic search by computer of the United States Patent and Trademark Office records of trademark applications reveals 139 applications for tradenames which include the phrase "country store". [See Goldman Declaration ¶ 13]. The application of the Plaintiff Corporation for registration Number 1591451 for the word mark "Vermont Country Store" bears the "disclaimer" that "NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE 'COUNTRY STORE' APART FROM THE MARK AS SHOWN".[See Goldman Declaration ¶14]. It also contains a "distinctiveness limitation" to wit: "AS TO THE WORD VERMONT".[Id]. The application of the Plaintiff Corporation for registration Number 2298586 for the word mark "The Vermont Country Store Apothecary" contains a "distinctiveness limitation Statement" to wit: "as to 'THE VERMONT COUNTRY STORE".[See Goldman Declaration ¶15].

1. <u>Lack of that "Use In Commerce" Required by the Lanham Act</u>

The factor that neither Goldman nor The Montpelier Vermont Country Store have ever sold, advertised for sale or transported actual goods or services in commerce using the tradename "The Montpelier Vermont Country Store" is dispositive against the Plaintiff Corporation.

15 U.S.C. § 1114(1)(a), the predicate for Count III of the complaint, conditions its liability and remedies upon "use in commerce". [2]  Likewise, 15 U.S.C. § 1125(a), the predicate for Count IV of the complaint, conditions its liability and remedies upon "use in commerce".[3] "Use in Commerce" for purposes of both §§ 1114 and 1125 is defined by 15 U.S.C. § 1127 to expressly require that use of the mark be in connection either with goods which are actually "sold or transported in commerce" or be in connection with advertised services which are actually "rendered in commerce".  §1127 also expressly states that mere reservation of a right in a mark is not sufficient to constitute such use in commerce.

Accordingly, Judge Sessions of this court dismissed the Lanham Act claim against a defendant whose only use of a mark was to register it because "unless and until [Intuit] uses the mark in the course of trade, to identify **actual** goods for sale or transport, it cannot be subject to suit for trademark infringement under §1125(a)." [emphasis supplied]  See Macia v. Microsoft I, 152 F.Supp.2d 535, 539 ( D.Vt. 2001).  See, e.g. Kusek v. Family Circle, Inc., 894 F.Supp 522,

---

[2]    15 U.S.C. Section 1114(1)(a) provides, in pertinent part:

Any person who shall, without the consent of the registrant - (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake or to perceive .... shall be liable in a civil action by the registrant for the remedies hereinafter provided....

[3]    15 U.S.C. Section 1125(a) provides, in pertinent part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which - (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association .... shall be liable in a civil action .....

532 (D.Mass)(mere registration does not amount to "use" of mark); Tubeco, Inc. v. Crippen Pipe Fabrication Corp, 402 F.Supp. 838, 847-48 (E.D.N.Y.1975)(because Lanham Act was directed against false representations of goods in interstate commerce, motion to dismiss granted where no sales of goods in commerce took place), aff'd, 538 F.2d 314 (2d Cir.1976).

The jurisdiction of this court under the Lanham Act is dependent upon the "use in commerce" of the infringing goods. Maier Brewing Company v. Fleischman Brewing Company, 390 F.2d 117, 119 (9th Cir.1968). Because there were never any actual goods or services in the stream of commerce under the mark "The Montpelier Vermont Country Store", there was no "infringement" by Goldman. See Wobble Light, Inc. v. McLain/Smigel Partnership, 890 F.Supp. 721,725. (N.D.Ill.1995)(Lanham Act claim fails because use of the challenged mark did not result in orders for goods which could be filled by the defendant). Thus this court lacks subject matter jurisdiction over Goldman under the Lanham Act.

As further explained below, even if the Court does have subject matter jurisdiction, the absence of an "infringement" undermines Plaintiff Corporation's request for injunctive relief.

(a) The statutory language of the Lanham Act's injunction provision requires the denial of Plaintiff Corporation's request for injunctive relief. 15 U.S.C. §1116 gives injunctive powers to "the several courts vested with jurisdiction of civil actions arising under this chapter". Since both of the sections upon which Plaintiff Corporation predicates its claims for liability, §§ 1114 and 1125, contain the "use in commerce" requirement, the factor that Goldman never had any goods/services in the flow of Commerce precludes resort to §1116 injunctive power. See Maier Brewing Company v. Fleischman Brewing Company, 390 F.2d 117, 119 (9th Cir.1968).

(b) Injunctive relief under the Lanham Act will not be granted unless it is reasonably probable that the Plaintiff will prevail after trial. See W.E. Bassett Company v. Revlon, Inc., 354 F.2d 868, 871 (2nd Cir.1966). It is not reasonably probable that Plaintiff Corporation will prevail against Goldman on either of its Lanham Act claims where, there being no "use in commerce", there has been no "infringement" by him.

(c) A preliminary injunction is proper only to prevent on-going violation of the Lanham Act. See Taubman v. Webfeats, 319 F3d 770 (6th Cir.2003). Plaintiff corporation has failed to identify any violation, be it ongoing or even in the past, by Goldman using The Montpelier Vermont Country Store tradename.

(d) The central inquiry in a Lanham Act infringement case is whether the use of a mark is likely to cause consumer confusion. Macia I, supra, 152 F.Supp.2d at 539. Because Goldman neither sold nor advertised actual goods, the Plaintiff Corporation does not and cannot demonstrate the "likelihood of confusion" required to sustain a Lanham Act Claim. Therefore, Plaintiff Corporation fails, in yet another way, to establish the likelihood of success on the merits which is a precondition to injunctive relief.

The type of confusion against which the Act was designed to protect is that which affects the purchasing and selling of the goods or services in question. See Macia v. Microsoft II, 327 F.Supp. 2d 278, 288 (D.Vt. 2003). As a Lanham Act claimant, Plaintiff Corporation must establish that an appreciable number of ordinary prudent purchasers are likely to be misled, or simply confused, as to the source of the goods in question. Macia v. Microsoft III, 335 F.Supp.2d 507, 514 (D.Vt.2004). To procure relief under the Act, it is incumbent upon Plaintiff Corporation to prove there is a likelihood of injury in terms of declining sales and loss of good will on account

of Defendant's infringing actions. See <u>Allen v. Howmedica Leibinger, Inc.</u>, 197 F.Supp.2d 101 (D.Del.2002).

But Plaintiff Corporation fails to make that required showing that the purchase and sale of goods was affected. This is not surprising since there is no evidence that Goldman ever used "The Montpelier Vermont Country Store" tradename to sell or advertise the sale of *any* goods, competing or otherwise. In short, Goldman had no goods which could be confused with the goods of the Plaintiff Corporation.

Irreparable injury is a prerequisite for the grant of the injunction Plaintiff Corporation seeks. Where as here, the Plaintiff fails to demonstrate a likelihood of confusion, there is no presumption of irreparable injury. See <u>Scotts Co. v. United Industries Corp</u>, 315 F.3d 264 (4th Cir.2002).

For each of the above reasons pertaining to the absence of "use in commerce", Plaintiff corporation's request for injunctive relief against Goldman must fail.

2. <u>PLAINTIFF'S MARK DOES NOT WARRANT PROTECTION</u>

Separate from the issue of whether Defendant has infringed it, is the issue of whether Plaintiff Corporation's mark is even entitled to trademark protection. When most Vermonters hear the phrase "Vermont Country Store", something definitive immediately comes to mind. But it is something other than on line shopping at Plaintiff Corporation's website.

Plaintiff Corporation's registration confers no more than prima facie evidence of its validity. 15 U.S.C. §1115(a). Registration notwithstanding, this court must evaluate whether Plaintiff Corporation's mark is, given it nature, entitled to protection. See <u>Equine Technologies v.</u>

Equitechnology, Incorporated, 68 F.3d 542, 544-45 (1st Cir.1995). Goldman contends that although registered, its mark is not worthy of the degree of protection sought by Plaintiff Corporation.

For purposes of the Lanham Act, a "generic" term, is one that actually defines a product and refers to the genus of which the particular product is a species. See Macia II, supra, 327 F.Supp.2d at 283. A term is "descriptive" if it describes the products features, qualities or ingredients in ordinary language or describes the use to which the product is put. [ Id.] .

Generic terms are never entitled to trademark protection. Macia III, 335 F.Supp.2d at 514. A descriptive mark is only entitled to protection if it has acquired secondary meaning in its particular market so that the consuming public primarily associates the term with a particular source.[Id]. Terms that are descriptive of the geographical location or origin of goods and services are regarded by the law as not being "inherently distinctive" marks. 2 McCarthy on Trademarks and Unfair Competition, (4th ed.)[2003], §14:1. If a geographic term is used to indicate the location or origin of goods and services, it is purely descriptive. [Id.]

Goldman contends that in both his tradename and that of Plaintiff Corporation, the phrase "Country Store" is generic. This contention is supported by, *inter-alia*, the following factors:

- The existence of the organization named "The Vermont Alliance of *Country Stores*";

- The at least eighteen stores in Vermont which use the phrase "*Country Store*" in their names;

- The Vermont Governor's proclamation recognizing the independent country store and proclaiming September 2003 as "Independent *Country Store* Month in Vermont";

- The book "The Story of the *Vermont Country Store*" by Plaintiff Corporation's founder Vrest Orten;

- The disclaimers as to "*country store*" and "The *Vermont Country Store*" on trademark applications made to the United States Patent and Trademark Office; and

- The "distinctiveness limitation statement" as to "The *Vermont Country Store* on Plaintiff's trademark application to the United States Patent and Trademark Office.

[See Goldman Declaration at ¶¶ 10-15 with supporting documents].

Goldman contends that the term Montpelier, Vermont in his registered tradename and "Vermont" in Plaintiff Corporation's name are geographically descriptive. Perhaps that is why Plaintiff Corporation's applications to the Unites States Patent and Trademark Office includes the "distinctiveness limitation": "as to the word VERMONT and "as to 'The Vermont Country Store". [Goldman Declaration ¶¶ 13-15]. Notably, each but one of the seventeen member stores of the Vermont Alliance of Independent Country Stores which use the phrase "Country Store" distinguishes itself from the others by also including in its name the name of the municipality in which it is located. [Goldman Declaration, ¶ 10].

In this case, the Plaintiff Corporation will be unable to prove that it has enforceable trademark rights in the term VERMONT COUNTRY STORE. That is because this purported mark is insufficiently distinctive to warrant trademark protection; because COUNTRY STORE is generic, and thus incapable to becoming a trademark; and because VERMONT is merely geographically descriptive so that VCS cannot preclude the use of this term by others who are, in fact, located in Vermont.

## 3. <u>EVEN IF PROTECTABLE, PLAINTIFF CORPORATION'S MARK IS WEAK</u>

A mark's distinctiveness in the marketplace is also a feature of its strength. <u>Macia II</u>, supra, 327 F.Supp.2d at 286. The use of part or all of a mark by third parties weakens the mark. [Id]. Because of the myriad of uses of its component terms in so many names by so many

different name owners [as is discussed in the preceding section of this brief] the name the "The Vermont Country Store" is anything but distinctive of Plaintiff Corporation.

4. **THE ALTERNATIVE BASIS FOR AN INJUNCTION DOES NOT APPLY**

As an alternative theory to likelihood of success on the merits, Plaintiff Corporation seeks injunctive relief on the basis that, *arguendo,* there are serious questions going to the merits which make them a fair ground for litigation and a balance of hardships tipping decidedly in movant's favor. Citing Tom Doherty Associates, Inc. v. Saban Entm't, Inc., 60 F.3d 27, 33 (2d Cir.1995). The alternative theory fails because Plaintiff Corporation does not meet either prong of that test.

As to the first prong, without there having been actual goods in commerce under Goldman's tradename, there was no infringement and neither Lanham Act Claim can lie against him [See Section 1 of this argument, supra]. There is no evidence of such actual goods before the court.[4] Plaintiffs' brief does not even argue that such evidence exists. As to that fatal defect in Plaintiffs' claims on the merits, then, there is no serious question.

As to the second prong, the balance of hardships tips decidedly in favor of Goldman, rather than in favor of the Plaintiff Corporation. Plaintiffs would impose damage on Goldman by having the court permanently and immediately deprive him of that name.

There is no hardship shown on Plaintiffs side to counter balance the harm that granting the injunction would work upon Goldman.. Plaintiffs do not identify any specific damage. The

---

[4] That Plaintiffs failed to recognize the that Goldman's tradename "The Montpelier *Vermont* Country Store" contains different language than does the name of Defendant Nelson's website, "www.montpeliercountrystore.com" does not rectify Plaintiff's burden to demonstrate "use in commerce" by Goldman.

Plaintiff Corporation's refers the court to the presumption that irreparable harm attends infringement. But, as discussed above, that presumption is not invoked where, as here, *there is no evidence of infringement*. The void remains unfilled as plaintiffs neither identify or substantiate any actual damage on account of Goldman's tradename.

What evidence there is tends to show that Plaintiff corporation has *not* been damaged by any use of Goldman's tradename. The undisputed facts include that Goldman had the tradename for more than a year before Plaintiffs even contacted him about the name, that he never used that tradename to sell goods or services or to advertise goods or services for sale and that he never even had a store or website using that tradename. This being so, it is impossible that Goldman's tradename diverted to him any of the sales or goodwill the Plaintiff Corporation would otherwise have garnered.

5. <u>IRREPARABLE INJURY REQUISITE FOR AN INJUNCTION HAS NOT BEEN SHOWN</u>

Plaintiffs brief concedes that its an actual and imminent injury that triggers the injunctive relief they seek. <u>Tom Doherty Associates,</u> supra, 60 F.3d at 37. But as the facts recited in the preceding paragraph establish, Plaintiff Corporation has failed to demonstrate that Goldman used his tradename in a manner which caused the Corporation *any* injury. Significantly, there has been no proof of any Lanham Act Infringement by Goldman. Thus plaintiffs do not satisfy the criteria for the grant of a preliminary injunction and should not be granted one against Goldman.

6. **<u>EVEN IF THERE IS IRREPARABLE INJURY, THE BALANCE OF HARDSHIPS FAVORS GOLDMAN</u>**

The court has an obligation to weigh the relative hardships to the parties in relation to its

decision to grant or deny a preliminary injunction, even if (as it has not been here), irreparable injury has been shown. <u>Ideal Industries, Inc. v. Garden Bender, Inc</u>. 612 F.2d 1018 (7th Cir.1979). For the reason recited in section 4, supra of this argument, the balance of hardships tips in favor of Goldman rather than in favor of the Plaintiff Corporation.

### 7. THE RELIEF SOUGHT IN THE ORDER TO SHOW CAUSE AND MOTION OF THE PLAINTIFF CORPORATION WOULD VIOLATE DUE PROCESS AND FUNDAMENTAL FAIRNESS

At the request of the Plaintiffs, the Court has fixed the time for Goldman to show cause within eight business days after the complaint and request for injunctive relief were served upon him.

Paragraph (c) of the Order to show cause, which is the only portion of it addressed to him, requires him to show why - at that expedited time - an order should not be issued "directing Goldman to <u>immediately cancel</u> the Vermont tradename registration for "Montpelier Vermont Country Store". Such a cancellation would permanently deprive Goldman of that tradename.

Therefore, the request, though posited as an order to show cause, is really one for final injunctive relief on the merits. To accomplish this result, the motion asks that the court to collapse all three phases of injunctive relief - the temporary restraining order, the preliminary injunction and the permanent injunction - into a single hearing on the merits to be heard before any discovery or even before the time to answer has expired.

This is not the "meaningful time and meaningful manner" due process contemplated by <u>Armstrong v. Manzo</u>, 380 U.S. 545, 85 S.Ct. 1187 (1965) and its progeny. Nor does it comport with Fed.R.Civ.Pro 65.

Such drastic relief is not warranted against Goldman. As noted above: there is no proof

that he infringed; there is strong reason to believe that the generic and geographically descriptive nature of Plaintiff Corporation's tradename deprives it of protection; there is no identification or proof of specific resulting damage; and the balance of hardships tips in Goldman's favor.

Where Goldman has never used it on actual goods in commerce, granting an injunction requiring immediate cancellation of his tradename would cause Goldman an injury which outweighs the harm to Plaintiff of not granting it. This is a good reason for denying the injunction request. See Equine Technologies, Inc., supra, 68 F.3d at 544.

WHEREFORE, the Defendant Alan Goldman respectfully requests that the court will not, at this stage of the proceeding, enter any injunctive relief against him.

Dated at Montpelier, Vermont, this 28th day of March, 2005.

The Defendant
Alan Goldman
By: _____
David Putter, Esquire
15 East State Street
Montpelier, VT 05602
Tel. (802) 229-0932

cc:   Andrew D. Manitsky, Esquire
      Michael E. Nelson, pro se